IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BENDIX COMMERCIAL VEHICLE, SYSTEMS LLC, *et al.*, | ) ) ) | CASE NO.: 1:09 CV 176 |
| Plaintiffs, | ) ) | |
| v. | ) ) | JUDGE DONALD C. NUGENT |
| HALDEX BRAKE PRODUCTS CORPORATION, | ) ) ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | ) ) | |

This matter is before the Court on Defendant's Motion For Summary Judgment of Non-

liability for any Infringement of U.S. Patent No. Re 38,874 Or, In the Alternative, That Plaintiffs

Are Not Entitled to an Injunction.  (ECF #70, 71).  Plaintiffs filed a Memorandum in Opposition

(ECF #86, filed under seal), and Defendant filed a Reply in support of its motion.  (ECF #102,

filed under seal).  Having reviewed the parties submissions, and all relevant law, the Court finds

that Summary Judgment is warranted on Defendant's absolute intervening rights defense under

35 U.S.C. § 252 with regard to the ModulX brake products made, used, sold or imported prior to

the issuance of U.S. Reissue Patent No. RE 38,874.  However, the questions of whether

Defendant is entitled to equitable intervening rights, is protected by equitable estoppel, or may

be subject to a permanent injunction if Plaintiffs prevail on their underlying claims all depend on

the resolution of factual issues that are not amenable to summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." FED. R. CIV. P. 56(C).  The burden of showing the absence of any such "genuine issue"

rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of
> informing the district court of the basis for its motion, and identifying those portions
> of 'the pleadings, depositions, answers to interrogatories, and admissions on file,
> together with affidavits, if any,' which it believes demonstrates the absence of a
> genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56©).  A fact is

"material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine"

requires consideration of the applicable evidentiary standards.  The court will view the summary

judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.,* 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57

F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence

presented is "merely colorable" and not "significantly probative," the court may decide the legal

issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).  On issues

for which the non-movant carries the burden of proof, the moving party need not negate the

claims; it can simply rely on the absence of the essential elements in the pleadings, depositions,

and answers to interrogatories. *St. Gobain Autover USA, Inc. V. Xinyi Glass N. America, Inc.*,

666 F.Supp.2d 820, 824 (N.D. Ohio 2009).

   In most civil cases involving summary judgment, the court must decide "whether

reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is

entitled to a verdict." *Id.* at 252.  However, if, the non-moving party faces a heightened burden of

proof, such as clear and convincing evidence, it must show that it can produce evidence which, if

believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th

Cir. 1989).

Once the moving party has satisfied its standard of proof, the burden then shifts to the

non-mover.  The non-moving party may not simply rely on its pleadings, but must "produce

evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't

of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is
> a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as

an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining

whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

A.  Intervening Rights Under 35 U.S.C. § 252

Title 35, Section 252 of the United States Code creates the defenses of absolute and equitable intervening rights to protect parties who are accused of infringing on patent claims set forth in a broadened reissue Patent under certain circumstances  when the alleged infringement occurred before the Reissue Patent was granted.

1.  Absolute Intervening Rights

As set forth in 35 U.S.C. § 252,

> [a] reissued patent shall not abridge or affect the right of any person or that person's successors in business, who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchases, offered for sale, used, or imported unless the making, using, offering for sale, selling of such thing infringes a valid claim of the reissued patent which was in the original patent.

In order to receive protection against infringement of the reissued patent, the accused party must establish that a tangible article or product was in existence before the reissue date, and that the product did not infringe on any claim within the original patent.  *See  Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1359 (Fed. Cir. 2001);  *BIC Leisure Prods., Inc. V. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1220-21 (Fed. Cir. 1993).

Plaintiffs have not contested Haldex's claim that the accused ModulX products did not infringe on any claim within the original patent ('445).  There is also no dispute among the

-4-

parties that Haldex is entitled to the protection of 35 U.S.C. §252 for the manufacture and sale of

any of the accused ModulX brake products prior to the reissue date.[1]   Therefore, Plaintiffs are

barred from seeking damages related to any such products manufactured before November 15,

2005.

2.  Equitable Intervening Rights

In addition to providing absolute protection against claims for products manufactured

prior to the reissue date,[2] 35 U.S.C. § 252, 35 U.S.C. § 252 allows the Court to extend that

protection to the continued manufacture, use, offer for sale, or sale of the product if such

protection is warranted by the equities of the situation.  Specifically, 35 U.S.C. § 252 states as

follows:

> The court before which such matter is in question may provide for the continued
> manufacture, use, offer for sale, or sale of the thing made, purchased, offered for
> sale, used, or imported as specified, or for the manufacture, use, offer for sale, or
> sale in the United States of which substantial preparation was made before the
> grant of the reissue, and the court may also provide for the continued practice of
> any process patented by the reissue that is practiced, or for the practice of which
> substantial preparation was made, before the grant of the reissue, to the extent and
> under such terms as the court deems equitable for the protection of investments
> made or business commenced before the grant of the reissue.

"[T]his sentence provides for the court to grant much broader rights than does the first sentence .

. . . [U]nder this language, the trial court may, as dictated by the equities, protect investments

---

[1]   Plaintiffs have agreed that they will stipulate that any of the accused ModulX brake
products manufactured prior to November 15, 2005 are beyond the scope of Plaintiffs'
infringement claim. (Opp. at 8, fn. 4).  Further, Plaintiffs' expert report on damages did not
include damages for any sales of the ModulX brake products prior to November 15, 2005.
(ECF #71-12 at 7).

[2]   Absolute protection is provided only if the conditions of the statute are met, i.e., the
product does not infringe the original patent.

made before reissue." *BIC Leisure*, 1 F.3d at 1221.  The reason behind the equitable extension of intervening rights is that "a person should be able to make business decisions secure in the knowledge that those actions which fall outside the original patent claims are protected."  *Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.*, 756 F.2d 1574, 1579 (Fed. Cir. 1985)(citing 4 Pat.L.Persp. § 10.8 (2d Ed. 1983).

When deciding whether to grant equitable intervening rights (and to what extent), a court should consider standard equitable considerations including: (1) whether substantial preparation was made by the now infringing party prior to the granting of the reissue patent; (2) whether there are existing contracts or orders for the now infringing products; (3) whether non-infringing products can be made from the inventory and equipment used to produce the non-infringing products, and how much it would cost to convert such resources to a non-infringing use; and, (4) whether the infringer has already made profits (by means of sales completed prior to the reissue date) sufficient to cover its investment.  *See Seattle Box Co., Inc.*, 731 F.2d at 1579-80.

Haldex claims that each of the above factors weighs in favor of granting them on-going equitable rights to continue the manufacture and sale of the ModulX products without royalties or other restrictions.  Haldex claims that it made major investments in the design of the ModulX products (including the cost of the design work, assembly line modifications, new tooling, new fixtures, product testing, labor costs, and marketing) prior to the issuance of the '874 Reissue Patent.  Haldex further asserts that none of these investments can be recouped or used towards the production of other non-infringing products.   Haldex also claims to have made sales to several third parties prior to the reissue date, and indicates that it continued to make sales to at least one customer after the reissue date had passed.  It does not specifically assert, however, that

-6-

it was contractually bound to supply any infringing products after the reissue date, or that it is has any current contracts or orders outstanding for the infringing products. Finally, Haldex asserts that it has not yet come close to recovering its investment costs by U.S. sales for ModulX products. Haldex alleges that it has had only $947,976 in gross sales, compared to an overall investment of over $2.4 million.

In addition to all of the listed factors, Haldex argues that Plaintiffs should be estopped from benefitting from the '874 patent (as against Haldex), because (1) they allegedly misrepresented the basis for the original '445 patent during the prosecution of the original patent, and during prior litigation, and (2) they delayed seeking the reissue patent, and delayed in bringing this infringement action against Haldex.[3] In addition, Haldex claims that Plaintiffs did not seek to expand their patent claims to include a one-piece caliper until after they had seen its design for the ModulX product.

Plaintiffs, on the other hand, assert that the equities weigh in their favor, and that there is, therefore, a genuine issue of material fact as to whether they are entitled to full protection against Haldex's infringements on the '874 Patent. Plaintiffs claim that Haldex investments were made with full knowledge that the product they were developing would infringe the '874 Patent. Investments made when a defendant "was fully cognizant at all times of the questionable legal status of [its] conduct" do not lend credence to a later request for equitable intervening rights. *See Henkel Corp. v. Coral Inc.*, 754 F.Supp. 1280, 1321 (N.D. Ill. 1990)(citations omitted).

---

[3] These same alleged facts are asserted in support of Defendant's claim for equitable estoppel. For the same reasons that apply to the denial of summary judgment on the equitable intervening rights claim, summary judgment is also denied as to equitable estoppel.

According to Plaintiffs, Haldex was well aware that Knorr-Bremse was seeking a reissue patent with claims that would cover the '445 Patent limitations Haldex's ModulX products sought to capitalize on (including claims relating to the one-piece caliper issue).   Plaintiffs allege that Haldex was warned in 2002 that its new design would infringe the pending reissue patent claims; and, that even after Haldex protested the relevant claims in the reissue patent, and its objections were overruled, it still continued to invest time and money in the development and manufacture of the infringing products.

Further, Plaintiffs claims that the main reason for the design and development of the ModulX product was not to promote sales in the United States, but was mainly to provide a product for sale in Europe and other countries where the market opportunities were greater. [4] Because sales outside the United States are not sales of infringing products under the U.S. Patent, Plaintiffs claim that Haldex cannot show that it will suffer a great loss on investment if future U.S. sales of the infringing product are barred.

Plaintiffs also contend that Haldex cannot establish bad faith based on their prior representations or their delay in applying for the reissue patent and addressing Haldex's infringement of that patent.   Plaintiffs note that however "delayed" Haldex may claim they were in seeking the reissue and commencing litigation, both actions were both undertaken in a legally timely fashion: the reissue Patent was timely filed, and the litigation was commenced within the statute of limitations.  As to Haldex's claim that Plaintiffs misrepresented the basis for the '445

---

[4]

  This argument finds some support in Haldex's own admission that the U.S. sales for the ModulX products have not been profitable, and that in seven years it has had only $947,976 in gross profits (with no estimate as to actual profits) stemming from an initial investment of over $2.4 million dollars.  (ECF #71 at 12).

Patent, Plaintiffs assert that whatever representations may have been made, Haldex cannot claim

reliance on any limiting statements because it was aware of their intent to seek a reissue Patent

and that an application in furtherance of this goal had actually been filed prior to expenditure of

much of the alleged $2.4 million investment in the creation of the infringing products.

Haldex counters or challenges many of Plaintiffs asserted facts and all of their

conclusions.  The parties disagree on when Haldex became, or should have become aware, that

its ModulX products would infringe on the reissue patent; on the motivation behind the filing of

the reissue patent; on the motivation for the development of the ModulX products (U.S. sales vs.

European and other international sales); and, on the timing of Haldex's investments relative to

the inclusion of specific  claims in the patent application.  Both parties have submitted some

evidence in support of their contentions.

Haldex has failed to provide specific information relating to the alleged investment costs,

including whether any of those costs would have been undertaken if it knew it would not be able

to manufacture or sell the ModulX products in the United States, or how all or any portion of

those costs may be recouped through the manufacture and sale of ModulX products outside of

the United States.   In addition, Haldex has not broken out what investment costs were already

committed to or paid for when (which could be relevant when deciding what costs a reasonable

business would have avoided at different stages of development and based on differing levels of

information indicating that the new product may infringe upon a patent application that was in

the process of review.) .   Because the Court finds that Haldex has not satisfied its burden to of

showing that there are no genuine issues of material fact with regard to the question of whether

Haldex is entitled to any equitable intervening rights or other equitable relief, its motion for

summary judgment on this basis is denied.

B.  Appropriateness of a Permanent Injunction

The Supreme Court has determined that, in patent cases, parties must satisfy the same

factors, and courts must follow the same principles of equity as in non-patent cases when

determining whether a permanent injunction is an appropriate remedy.  *See eBay Inc. v.*

*MercExchange, L.L.C.*, 547 U.S. 388, 393 (U.S. 2006).  The factors to be considered are

whether: (1) the patentee has suffered an irreparable injury; (2) remedies available at law, such

as monetary damages, are inadequate to compensate for that injury; (3) considering the balance

of hardships between the plaintiff and defendant, a remedy in equity is warranted; and, (4) the

public interest would be compromised by the issuance of a permanent injunction.  *Id.* at 391.

In this case, Haldex has failed to provide evidence sufficient to satisfy its burden on a

summary judgment motion, proving that Plaintiffs cannot establish a right to injunctive relief.

Where, as in this case, the infringer is a direct competitor of the Plaintiffs, or if they can show

that they will suffer lost customers, the first and second factors may weigh in favor of a

permanent injunction,.  *See, e.g., Mass Engineered Design, Inc. v. Ergotron, Inc*., 633 F.Supp. 2d

361, 393 (E.D. Tex. 2009); *Becton Dickinson and Co. v. Tyco Healthcare Group LP*, 02-1694

(GMS, 2008 WL 4745882, at *3 (D. Del. Oct. 29, 2008).  Further, the mere fact that Plaintiffs

have assigned a monetary value to past infringement, does not mean that the same monetary

assessment applies to future infringement.  There can be no retroactive injunctive relief, so

Plaintiffs have no option but to attempt to assign a monetary value to their current loss, this does

not necessarily mean that the monetary compensation can fully address their losses, only that

there is no other remedy available for past injuries.   Further, as set forth above in the discussion

-10-

relating to Haldex's claim for equitable relief from prosecution, there are material issues of fact relating to the assessment of the equities in this case that preclude a finding of summary judgment on this basis.   Consequently, although it is possible that the Court could find that Plaintiffs do not meet the requirements for a permanent injunction based upon the evidence presented at trial, there are sufficient questions of fact to preclude a finding of summary judgment in Haldex's favor on this issue.

## CONCLUSION

For the reasons set forth above, Defendant's Motion For Summary Judgment of Non-Liability For Any Infringement of U.S. Patent No. Re 38,874 Or, In the Alternative, That Plaintiffs Are Not Entitled to An Injunction (ECF #70), is Granted in Part and Denied in Part. Haldex's request for summary judgment establishing its right to absolute intervening rights under 35 U.S.C. §252 is granted.  Plaintiffs may not recover damages resulting from Defendant's past or future use of, offer to sell, or sale of the accused ModulX brake products that had been manufactured prior to November 15, 2005.  However, summary judgment is denied as to Haldex's request for equitable intervening rights, equitable estoppel, and a definitive ruling eliminating the possibility of a permanent injunction.  IT IS SO ORDERED.

 /s/ Donald C. Nugent
Judge Donald C. Nugent
United States District Judge

 Date:   August 19, 2010

-11-