UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BENDIX COMMERCIAL VEHICLE SYSTEMS, *et al.*, | Case No. 1:09-CV-0176 |
| Plaintiffs, | |
| | JUDGE DONALD C. NUGENT |
| v. | |
| HALDEX BRAKE PRODUCTS CORPORATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

This matter is before the court on Defendant Haldex Brake Products Corporation's ("Haldex") Motion for Partial Summary Judgment of Invalidity of U.S. Patent No. RE 38,874 Under 35 U.S.C. § 251 and the Recapture Rule, and for Summary Judgment Based on Judicial Estoppel (ECF #64), Haldex's Motion for Summary Judgment of Invalidity of U.S. Patent No. RE38,874 Under 35 U.S.C. § 112 and the Same Invention Requirement of 35 U.S.C. § 251. (ECF # 68). Also before the Court are Plaintiffs, Bendix Commercial Vehicle Systems LLC ("Bendix"), Knorr-Bremse Systeme fur Nutzfarhzeuge GmbH ("Knorr-Bremse"), and Bendix Spicer Foundation Brake LLC's ("Bendix Spicer") Motions for Summary Judgment that the Claims of U.S. Patent No. RE38,874 Are Not Invalid Under 35 U.S.C. § 251 For Violation of the Recapture Rule (ECF #65) and that Their Claims Are Not Barred by Judicial Estoppel. (ECF #66). For the following reasons, the Plaintiffs' motions for partial summary judgment are granted and Haldex's motions for summary judgment are denied.

## **FACTUAL AND PROCEDURAL HISTORY**[1]

Knorr-Bremse, a manufacturer of braking systems for commercial vehicles, is the owner of the RE '874 patent, which is a reissue of U.S. Patent No. 5,927,445 (the "'445 patent").  Bendix, a subsidiary of Knorr-Bremse, holds an exclusive license under the RE '874 patent.  Bendix Spicer holds a limited sublicense to the RE '874 patent.  Knorr-Bremse, Bendix, and Bendix Spicer allege that Haldex is manufacturing air disc brakes that infringe upon numerous claims of the RE '874 patent.

Haldex manufactures and supplies brake systems, including air disc brakes, for heavy trucks, trailer, and buses in the United States and internationally.  Haldex contends that even if it has infringed the claims of the RE '874 Patent, the reissued patent is invalid because it attempts to recapture subject matter surrendered during prosecution of the original '445 patent.  Further, Haldex claims that Plaintiffs should be estopped from asserting infringement based on Haldex's manufacture of a two piece caliper because during prior litigation relating to the original '445 patent, Plaintiffs represented that a one piece caliper was a necessary and important aspect of the original patent.

A.  The Technology

The RE '874 patent discloses an improved disk brake for road vehicles.  The improved disc brake consists of a caliper which engages about a brake disk of a vehicle wheel.  The caliper can be cast in one piece to keep the braking components free from any sealing issues.  The caliper, however, contains an opening facing the brake disk.  The opening is large enough to insert the brake application unit, as a preassembled unit, into the caliper.  The brake application unit is the device that transfers force

---

[1] The facts and procedural history have been taken from the undisputed statements set forth in the parties' briefs, from evidence not countered by the opposing party, and from official court records.  Because the parties have filed cross-motions for summary judgment on this issue, there is no way to resolve contested facts in favor of the "non-moving party."  However, the Court found no material questions of fact, properly supported by the requisite level of evidence, to be in dispute.

to the brake shoes with enough strength to stop the vehicle. When the brake application unit has been inserted into the caliper, the opening in the caliper is closed by a closure plate.

B.     Prosecution History

On April 27, 1995, Knorr-Bremse filed its original Application No. DE 19515063 ("German application") entitled "Disc Brake for Vehicles, in Particular Road Vehicles" in the German Patent and Trademark Office. On February 1, 1996, as allowed by the Patent Cooperation Treaty ("PCT"), Knorr-Bremse filed an identical international patent application, No. PCT/DE96/00193 (the "'193 application"), using the European Patent Office ("EPO") as the receiving office.

The EPO, acting in its capacity as the PCT International Preliminary Examining Authority ("EPO Examining Authority"), determined in a written opinion that the original patent application claims were not patentable as being obvious over the prior art. In a letter dated June 5, 1997, Knorr-Bremse submitted new claims 1-6 on replacement sheets (also called annexes) in response to the EPO Examining Authority's written opinion. In support of the new claims, Knorr-Bremse made the following statements:

> It is of substantial importance that the brake application unit can be introduced as a pre-assembled unit . . . . The substance of the invention therefore lies in the fact that the brake application unit is joined together with any desired means . . . in such a way that it can be introduced as a whole, and therefore not individual components, through the opening facing the brake disk. Accordingly, the teaching of the present invention is directed toward the "pre-assembled" unit in its entirety and less toward the specific structural means of achieving pre-assembly.

(ECF # 78-44). The annexes last appeared as an attachment to the International Preliminary Examination Report ("IPER") issued by the EPO Examining Authority on August 1, 1997. The IPER stated that the new claims in the annexes were, as a general matter, patentable. In addition, the IPER stated the following:

> 1. The closest prior art is represented by FR-A-2 306 372 which discloses a disc brake with an integral brake caliper whose brake application unit . . . *has to be introduced* into the brake caliper in *individual parts* via an additional side opening. An additional opening of this type should be avoided for stability reasons.
>
> Therefore, claim 1 *proposes* introducing the brake application unit as a *pre-assembled unit* into the brake caliper opening opposite the brake disc.
>
> 2. Claims 2 to 6 concern advantageous configurations of the disc brake as per claim 1. For reasons of clarity and clear delimitation over the closest prior art, claim 1 should state clearly that the size of the brake caliper opening opposite the brake disc is such that the pre-assembled brake application unit *can be introduced* through this opening.
>
> At present, the characterizing part of claim 1 merely describes the effect to be achieved.

(ECF # 84-22) (emphasis added).

On October 27, 1997, Knorr-Bremse filed a request to commence the United States national stage of the PCT application, which was assigned Application No. 08/945,457 (the "'457 application") by the United States Patent and Trademark Office ("USPTO"). The filing included an English language translation of the German application and an English language translation of the IPER, but not a translation of the annexes containing the new claims. Rather, Knorr-Bremse specifically requested that the PCT International Bureau issue its English translation of the IPER without annexes. Instead, in the transmittal letter to the USPTO, Knorr-Bremse noted: "APPLICANT WISHES THAT THE ANNEXES TO THE INTERNATIONAL PRELIMINARY EXAMINATION REPORT REPLACE THE APPROPRIATE PAGES OF THE CLAIMS AS FILED." Notwithstanding that statement, Knorr-Bremse did not mark the appropriate boxes in the transmittal letter indicating that any amendments to the original claims were to be included in the application to the USPTO. Knorr-Bremse made a preliminary amendment concerning the original claims of the German application, but never addressed the claims contained within the annexes.

On November 24, 1998, the USPTO issued an Office Action rejecting claim 1 of the '457 application under 35 U.S.C. § 112, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Knorr-Bremse regarded as the invention. Claim 1 read, in pertinent part, as follows:

> b) the application unit can be inserted as a preassembled unit into the caliper through the opening facing the brake disk when the caliper is removed from the brake disk.

The USPTO examiner stated that the phrase "can be inserted" renders the claim indefinite because it is unclear whether the limitations following the phrase are parts of the claimed invention. (ECF # 84-13). After stating that claims 9-11 were allowed, the examiner made the following assertion:

> The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.
>
> Antony discloses a disc brake assembly comprising of most of the features and components claimed by the applicant. The location of an opening for insertion of a preassembled application unit and a need of a plate for closing off this opening is not adopted by Anthony [sic] for his disclosure.

(ECF # 84-13).

On February 24, 1999, Knorr-Bremse filed an amendment to claim 1 in response to the indefiniteness rejection. Amended claim 1 reads, in pertinent part, as follows:

> b) the application unit is insertable as a preassembled unit into the caliper through the opening facing the brake disk when the caliper is removed from the brake disk.

(ECF # 6-1) In the "Remarks" field of the amendment, Knorr-Bremse stated, "Since the amendments herein relate to only formal matters, responsive to objections raised in the Office Action, the application should now be considered in clear condition for allowance." (ECF # 84-14).

On July 27, 1999, the '457 application issued as United States Patent No. 5,927,445 (the "'445 patent") entitled "Disc Brake for Vehicles Having Insertable Actuator." Two years later, on

July 27, 2001, Knorr-Bremse sought reissue, arguing that it had a right to broader claims than those contained in the '445 patent.  Specifically, in a declaration accompanying the reissue application, the inventors stated:

> Both original independent claims one (1) and nine (9) recite several components of the brake application unit such as the "eccentric" and the "pressure piece".  Inclusion of these components are examples of errors which render the original patent wholly or partly inoperative by reason of the patentees claiming less than they had the right to claim in the patent.  The patentees are entitled to broader claims to a caliper and pnuematic brake that are not limited to specific brake application unit structures other than those of a rotary lever.

The reissue application did not include any changes to the eleven claims of the '445 patent, but added new, broader, claims.

During the prosecution of the reissue application, Haldex, filed a protest.  In the protest, Haldex argued that many of the reissue claims improperly recaptured subject matter previously surrendered by Knorr-Bremse in the disclosure of the original specification and through statements made during prior litigation with Haldex, by expanding the scope of the patent from a one piece caliper to any caliper with the requisite opening, regardless of how many parts it has.

A USPTO examiner ruled that Haldex's interpretation of the recapture rule was erroneous because the rule only applies to amendments of claims or arguments made by the applicant to distinguish claims over the prior art of record during prosecution of the original application.  Regarding the '457 application, the examiner stated that "[n]o rejection of the claims over the prior art of record was made in the application and therefore no arguments were made to distinguish the claims from the prior art of record." (ECF # 84-20).  Thus, the examiner found that Knorr-Bremse did not surrender the subject matter at issue in the protest.

Finally, on November, 15 2005, the USPTO issued RE '874 patent. It included a total of 98 claims, including the eleven claims from the '445 patent.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e)(2):

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.

FED. R. CIV. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this court must view all of the evidence in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is

entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. General statements or conclusory allegations do not create specific fact disputes "showing that there is a genuine issue for trial." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## ANALYSIS

"Under the reissue statute, a patentee may surrender and seek reissue 'enlarging the scope of the [original patent's] claims' if 'through error without any deceptive intent' he claimed 'less than he had a right to claim in the [original] patent' and he applies for reissue within two years from the grant of the original patent." *MBO Laboratories, Inc. v. Becton, Dickinson & Co.,* No. 2008-1288, 2010 WL 1427547, at *5 (Fed. Cir. Apr. 12, 2010) (citing 35 U.S.C. § 251). Section 251 "is remedial in nature, based on fundamental principles of equity and fairness, and should be construed liberally." *In re Weiler*, 790 F.2d 1576, 1579 (Fed. Cir. 1986). However, "[t]he reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute *de novo* his original application." *Id*. at 1582.

Determining whether the claims of a reissued patent violate 35 U.S.C. § 251 is a question of law. *See Pannu v. Storz Instruments, Inc.,* 258 F.3d 1366, 1370 (Fed. Cir. 2001); *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997). This legal conclusion can involve findings of undisputed fact that are taken directly from the prosecution file histories and the claims and specifications of the '445 patent and '874 reissue. *See Hester Indus., Inc. v. Stein, Inc.,* 142 F.3d 1472, 1484 (Fed. Cir. 1998). Additionally, "[c]laim construction is a purely legal question" and appropriate for summary

judgment.  *Pannu,* 258 F.3d at 1370 (citing *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc); *Westvaco Corp. v. Int'l Paper Co.,* 991 F.2d 735, 741 (Fed. Cir. 1993)).

      A.      <u>The Rule Against Recapture</u>

Under the recapture rule, a patentee is prevented "from regaining through reissue the subject matter that he surrendered in an effort to obtain allowance of the original claims." *Clement*, 131 F.3d at 1468; *see also Mentor Corp. v. Coloplast, Inc.*, 998 F.2d 992, 996 (Fed.Cir. 1993).  In determining whether the recapture rule has been violated, a three-step test is applied.  *See Pannu*, 258 F.3d at 1371.  The first step is to ascertain "whether and in what 'aspect' the reissue claims are broader than the patent claims." *Id*.  Second, if the subject matter of the reissue claims are broader, the court determines "whether the broader aspects of the reissued claim related to surrendered subject matter." *Id*.  To determine whether an applicant surrendered particular subject matter, this court must ask "whether an objective observer viewing the prosecution history would conclude that the purpose of the patentee's amendment or argument was to overcome prior art and secure the patent." *MBO Laboratories*, 2010 WL 1427547, at *6 (citing *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1323 (Fed.Cir. 2006).  "Although the recapture rule does not apply in the absence of evidence that the applicant's amendment was 'an admission that the scope was not in fact patentable,' the court may draw inferences from changes in claim scope when other reliable evidence of the patentee's intent is not available." *Clement*, 131 F.3d at 1469 (quoting *Ball Corp. v. United States*, 729 F.2d 1429, 1436 (Fed.Cir. 1984)).  Finally, "the court must determine whether the reissued claims were materially narrowed in other respects to avoid the recapture rule." *Pannu*, 258 F.3d at 1371.

In this case, the parties agree that several aspects of the reissue claims are broader than the original patent claims. They also agree that the reissued claims were not materially narrowed in other respects to avoid the recapture rule. Therefore, there is no dispute as to the first and third steps of the recapture rule analysis. Accordingly, this court need only address the second step to determine whether Knorr-Bremse surrendered subject matter and "whether the broader aspects of the reissued claim related to surrendered subject matter." *Pannu*, 258 F.3d at 1371.

Haldex does not cite to any part of the prosecution history that would show that Knorr-Bremse surrendered any subject matter relating to construction of the caliper in order to overcome a prior art rejection during the prosecution of the original patent. Rather, Haldex contends that statements defining the invention repeatedly reference a one-piece caliper, and this one piece design was necessary to overcome prior art. The citations to the patent record indicate that the objective of the design was to eliminate stability problems, sealing problems, and other problems stemming from the exertion of force on the screws that exist in the rearward section of the caliper housing in the prior art. According to the specifications, the brake response force flows rearward, placing stress on the back panel of the caliper housing, and resulting in the listed problems.

There is no question that the original patent repeatedly referenced a one-piece caliper, however, the reissued patent is not limited to the same claims and restrictions described in the original patent. There would be no reissue, if Plaintiffs were not entitled to seek broader protection than that provided by the original patent. Further, expanding the patent protection to include calipers made with multiple parts does not violate the original purpose of the patent, or interfere with the described prior art, so long as the rear housing section of the caliper remains as a single piece, without any screwed connections. There is no evidence that connections or screws in other areas of

the caliper are subject to the same problems sought to be addressed by the patented invention, or that they are subject to the rearward force of the brake response. The references to a one-piece caliper in the original patent specifications were directed at ensuring that the rear housing section of the caliper would be constructed in one piece to avoid the problems created by having connecting screws that could not withstand the force of the brake response over time. There is no indication that any multi-piece caliper, still containing a solid one-piece rear housing section, was disavowed or intentionally surrendered, nor that the prior art would have prohibited the inclusion of a caliper constructed in this way. Therefore, even if, as Haldex argues, the law recognizes "that the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor," no such disclaimer or disavowal exists in this case. *See, Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1368 (Fed. Cir. 2009), citing *Phillips v. AWH Corp.*, *415 F.3d 1303, 1316 (Fed. Cir. 2005) and SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc*., 242 F.3d 1337, 1341 (Fed. Cir. 2001).

      Haldex also points to statements made after the issuance of the original patent, during a prior litigation over that patent, claiming that these statements constitute the surrender of claims relating to anything other than a one-piece caliper. Acceptance of this argument would require an extension of the current law governing the recapture rule. Federal Circuit case law clearly holds that a surrender, for purposes of the recapture rule, can only be made through arguments, statements, and amendments made during the prosecution of the original patent. *See, e.g., Hester Indust, Inc. v. Stein, Inc.*, 142 F.3d 1472, 1480 (Fed. Cir. 1998)(citing *In Re Clement*, 131 F.3d 1464, 1469 (Fed. Cir. 1997)("To determine whether an applicant surrendered particular subject matter, we look to the prosecution history for arguments and changes to the claims made in an effort to overcome a prior art rejection."). The public is entitled to rely upon the patent's public record, as set forth in the

claims, specifications, and file history to determine the patent's scope.  However, the public is not entitled to rely on any other extrinsic evidence, including trial testimony to find evidence of surrender.  To hold otherwise could encourage inventors to seek out obscure statements or other evidence of surrender and would place some knowing members of the public in a more advantageous position than others who were not privy to the same evidence.   *See, Festo Corp. v. Shoketsu*, 535 U.S. 772, 739 (U.S. 2002)("Courts must be cautious before adopting changes that disrupt the settled expectations of the inventing community.")  The claims covered by a patent should be equally obvious to all future inventors who review the formal prosecution history of the patent, such that every member of the inventing community is on equal footing with regard to the protection of their own inventions.  For these reasons, this Court will not extend the application of the recapture rule to alleged surrenders made outside of the formal prosecution of the original patent.

The only rejection of record is the § 112 rejection for indefiniteness, which, despite the reference to prior art,  was not a prior art rejection, and which related to the construction of the brake application unit, not the construction of the caliper.  Knorr-Bremse never indicated during the USPTO prosecution that it intended to narrow the scope of its claims when it changed the insertion language to address this rejection.  Even the patent examiner overseeing the dispute between Knorr-Bremse and Haldex during the reissue proceedings noted that  "[n]o rejection of the claims over the prior art of record was made" during the prosecution of the '445 patent.  Thus, this court finds no surrender of any claims of the '874 patent during the prosecution of the '445 patent.  *Cannon Rubber*, 163 F.App'x at 876.

The prosecution history in this case fails to show that the patentee intended to renounce coverage in the claims for any calipers other than one-piece calipers. *See Omega Eng'g v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003). Haldex has offered no evidence of any surrender during the prosecution of the original patent, and no objective observer would conclude that the Knorr-Bremse had surrendered any claims to multiple piece calipers in order to overcome prior art. *See MBO Laboratories*, 2010 WL 1427547, at *6

B.   Judicial Estoppel

Judicial estoppel is an equitable doctrine that prevents a litigant from "perverting" the judicial process by taking a position in one litigation, that is contrary to a position they had argued and prevailed on in a prior litigation, against a party who relied on the earlier position. *Sandisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1290 (Fed. Cir. 2005). "Judicial estoppel is applied with caution to avoid impinging on the truthseeking function of the court." *Teledyne Industries, Inc. v. NLRB*, 911 F.2d 1214, 1218-19 (6th Cir. 1990).

Without establishing any hard and fast test, the United States Supreme Court has outlined several factors to be considered when deciding whether to apply judicial estoppel in any individual case. First, the party's later position must be "clearly inconsistent" with its earlier position. Second, the party must have succeeded in persuading a court to adopt the party's earlier position in the earlier proceeding, so that acceptance of the later position would create the "perception that either the first or second court was misled." Finally, the court should consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Mane*, 532 U.S. 742, 750-51 (2001); see

also, *Sandisk*, 415 F.3d at 1290-91.   "These factors, while not exclusive, must guide the court's application of its equitable powers."  *Sandisk*, 415 F.3d at 1291.

Under the circumstances, Haldex has not established that Knorr-Bremse's earlier position was "clearly inconsistent" with its current stance.  Further, the record, when fully reviewed, does not lead the Court to believe that Plaintiffs either intended to or succeeded in misleading either this or the Virginia Court.  As stated in the discussion concerning the specification in the original patent application, Knorr-Bremse's prior arguments relating to a one-piece caliper appear to have been directed at the one-piece closed rear housing section of the caliper.  This is the section of the caliper at which the original patent was directed, and is the section of the caliper that Haldex altered in an unsuccessful attempt to avoid infringing the original patent.  There was no need to distinguish between a one-piece caliper and a caliper with a one-piece housing, or rear housing section in the prior litigation.  Therefore, the term "one-piece caliper" was used generally when discussing the caliper housing section .[2]  This, however, does not mean that Plaintiffs intentionally or clearly stated a position inconsistent with their argument in this litigation, or that they misled the court in the prior litigation.[3]  There is no indication that any of Knorr-Bremse's arguments in the prior litigation were directed at, or would have applied to a product, such as the one at issue in this case, wherein the

---

[2] Further, the language discussing a preferred embodiment of the invention wherein the entire caliper is constructed in one piece is not forever binding on the patentee.  Federal Circuit precedent instructs that "the number of embodiments disclosed in the specification is not determinative of the meaning of the disputed claim terms."  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).

[3] In fact, the Virginia court separately defined "one-piece caliper" as discussed in some claims, and "caliper" as discussed in others.  This distinction would have been unnecessary if the Virginia court had been misled into believing that the whole caliper had to be constructed in one piece in order to be afforded protection under all claims of the original patent.

caliper is constructed in multiple pieces, but has a single piece rear housing section that is not subject to the problems associated with screw connections in the housing unit, as existed in the prior art.

The Virginia litigation centered on a different patent, with a different infringing product. The alleged infringement in this case did not exist in the Virginia case, and Plaintiffs did not appear to make any statements that would have applied to some future product constructed in multiple parts, but maintaining a single piece housing unit.  There is no evidence of any intent by Knorr- Bremse to mislead the Virginia Court, or to otherwise surrender any rights they may have had to pursue protection for broader rights under a reissued patent in the future.

    C.  <u>Written Description and Subject Matter Requirement of U.S.C. § 112.</u>

A patent specification describes the invention and sets out the scope of the patent.  The original '445 patent and the '874 patent in this case share the same specification.  The specification does not describe a multi-piece caliper; it does, however, mention a one-piece caliper several times. Haldex claims that because the specification does not mention a multi-piece caliper, any claim covering a multi-piece caliper fails to comply with the "written description" requirement of 35 U.S.C. § 112, Paragraph 1.  Further, Haldex claims that Knorr-Bremse's statements in the prior litigation are proof that it does not regard the multi-piece caliper as its invention, rendering claims involving a multi-piece caliper invalid for violation of the "subject matter" requirement of 35 U.S.C. § 112, Paragraph 2.

Title 35 of the United States Code, Section 112 requires the following:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact

> terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
>
> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Haldex is correct that the specification does not provide a written description aimed at the invention of a multi-piece caliper.  This has no bearing on the validity of the patent, however.  The patented invention is not a multi-piece caliper (which in and of itself neither distinguishes the invention from nor solves any identified problem in the prior art), but neither is it necessarily a caliper wholly constructed in one piece.

Plaintiffs argue that the invention is a caliper, that among other things, has a one-piece housing section in order to eliminate prior problems stemming from the use of screws to attach a back plate that closed the housing section of the caliper, and that this the invention described in the specification.  The specification also arguably describes the construction of the caliper as being in one-piece,[4] however, according to Plaintiffs this merely describes the "best mode contemplated by the inventor of carrying out his invention" or the preferred embodiment of the invention, as required by §112, Paragraph 1.  The claims in the patent are not limited by the expression of the preferred embodiment.  The Federal Circuit has stated that "the number of embodiments disclosed in the specification is not determinative of the meaning of the disputed claim terms." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).  Therefore, a different embodiment,

---

[4] Only in the "Detailed Description" section do the inventors expressly indicate that the best option and preferred embodiment involves a caliper constructed entirely in one-piece as a cast or forged part.  ('874 Patent at 2:46-49).

involving a multi-piece caliper that contains a one-piece housing unit, with no screws or backplate, in order to better withstand the braking force applied to the housing unit, would be covered by the written description and subject matter set forth in the '874 specification.

The language contained in the patent specification, as well as Plaintiffs' expert's opinion provide evidentiary support for Plaintiffs construction of the specification language.  At this stage of the proceedings, the Court must construe the facts in the light most favorable to Plaintiffs, and all ambiguities are to be resolved in Plaintiffs' favor.  Haldex, therefore, has not met it burden of establishing by clear and convincing evidence that the '874 Patent failed to comply with the requirements of 35 U.S.C. § 112, Paragraphs 1 and 2, and it's Motion for Summary Judgement on these grounds must be denied.

### D.  Same Invention Requirement of 35 U.S.C. § 251.

Section 251, first paragraph, of the Patent Act states that claims on reissue must be directed to "the invention disclosed in the original patent," and that "[n]o new matter" may be added to the patent during reissue.  35 U.S.C. § 251. "[A] court must ascertain whether 'the disclosure originally filed [conveys] to those skilled in the art that [the reissue] applicant had invented the subject matter later claimed."  *In Re Amos*, 953 f.2d 613, 618 (Fed. Cir. 1991)(quoting in part, *In Re Wilder*, 736 F.2d 1516, 1520 (Fed. Cir. 1984).  In this case, the specification for the '874 patent and the '445 patent are the same; no new matter has been introduced to the subject matter of the invention.  Thus, the only remaining question is whether the new claims are sufficiently described in the specification.

In this instance, therefore,  the claim for invalidity based on the "same invention" requirement must rise or fall along with the claim for invalidity based on the written description and subject matter

- 17 -

requirements.  As Haldex has failed show by clear and convincing evidence that the Patent is invalid under 35 U.S.C. § 112, it likewise fails to show that the '874 Patent is invalid under 35 U.S.C. § 251.

## **CONCLUSION**

For the reasons set forth above, the Plaintiffs' motions for partial summary judgment (ECF # 65, 66) are GRANTED; and Defendant, Haldex's motions for summary judgment (ECF #64, 68) are DENIED.  IT IS SO ORDERED.


    /s/ Donald C. Nugent
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE


Date:  September 10, 2010