**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENDIX COMMERCIAL VEHICLE, SYSTEMS, LLC, *et al.*, | ) ) ) | CASE NO. 1:09 CV 176 |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiffs, | ) | |
| v. | ) ) | MEMORANDUM OPINION |
| HALDEX BRAKE PRODUCTS CORPORATION, | ) ) ) | AND ORDER |
| Defendant. | ) | |

This matter is before the Court on Defendant, Haldex's Motion For a New Trial Or, Alternatively, a Judgment As a Matter of Law Regarding Willfulness. (ECF #186). Plaintiffs filed an Opposition to Haldex's Motion, and Defendant filed a Reply. (ECF #205, 207). Based on a review of the Parties' submissions, the relevant law, and the transcripts of the trial proceedings, the Court finds that Haldex's Motion is not supported by the facts or the law, and that it should be DENIED.

**I. Motion for New Trial**

   A. Legal Standard

Federal Rule of Civil Procedure 59(a) provides that a "court may, on motion, grant a new trial on all or some issues – and to any party – . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).

Among the appropriate reasons would be if there was a prejudicial error in the jury instructions, or if those instructions were inadequate. *Chiron Corp. v. Genentech, Inc*., 363 f.3d 1247, 1258 (Fed. Cir. 2004).

It is well settled that a jury's verdict is presumptively valid. *Brooks v. Toyotomi Co.*, 86 F.3d 582 (6th Cir. 1996). In rendering its verdict, a jury is presumed to have followed the court's instructions to leave emotion and sympathy at the door and to decide the case based on the evidence, uninfluenced by passion or prejudice. *Caldwell v. Ohio Power Co.,* 710 F.Supp. 194 (N.D. Ohio 1989). Although a district court is generally required to presume that a jury verdict is valid, Fed. Civ. R. 59 does provide a means by which the court may grant a party a new trial on all or some of the issues raised, or by which the court may alter or amend a judgment.

Fed. Civ. R.59 does not permit a court to set aside a jury verdict "simply because different inferences and conclusions could have been drawn or because some other results are more reasonable." *J.C. Wyckoff & Assoc., v. Standard Fire Insurance Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991). A new trial may be granted only if it is clear that the jury reached a "seriously erroneous result." *Brooks v. Toyotomi Co.*, 86 F.3d 582 (6th Cir. 1996). The Sixth Circuit has stated that a jury reaches a "seriously erroneous result" if (1) the verdict is against the weight of the evidence; (2) the damages are excessive; or (3) the trial was unfair in some fashion such that the proceedings were influenced by prejudice or bias. *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041 (6th Cir. 1996).

B. <u>Analysis</u>

Haldex argues that a new trial is warranted because the Court provided erroneous and prejudicial jury instructions and jury interrogatories on the issue of willfulness. A properly

2

preserved objection to a jury instruction is reviewed by determining whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury. *United States v. Blook*, 435 F.3d 612, 623 (6th Cir. 2006); *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000).  In this case, Haldex claims that the jury instructions with regard to the willfulness claim were inadequate because the Court "did not instruct the jury to consider reasonable defenses based on validity" and did not "provide any instruction on the crucial factor of whether Haldex received and relied on favorable advice of counsel."  (ECF #186, at 3).

As Haldex stated in its Motion, a finding of willfulness requires proof "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  (ECF #186, at 4 (citing *In Re Seagate Tech*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).  Further, "[a] primary consideration for willful infringement . . . is whether the infringer had a good faith belief that the patent was invalid and/or not infringed."  (Id. (citing *Wexhsler v. Macke Intern. Trade, Inc.*, 486 F.3d 1286, 1292 (Fed. Cir. 2007).  In making its defense against willfulness, Haldex admittedly "rested heavily on its reliance on an opinion of counsel."  (ECF #186).

The Court correctly and adequately instructed the jury on the requirements and factors to be considered when determining willfulness.  When viewed as a whole the instructions clearly required the jury to evaluate Haldex' defenses, including invalidity and advice of counsel, in order to determine whether the infringement was willful.  In part, the jury was instructed that in order to find against Haldex on the issue of willfulness, it must find "that there was an objectively high likelihood that Haldex's actions infringed on a valid patent ;" that they must find "by clear and convincing evidence that this objectively higher risk of infringing a valid

3

patent was either known by Haldex or so obvious that it should have been known by Haldex;" that they "must consider all the facts, which may include but are not limited to . . . whether or not there is a reasonable basis to believe that Haldex had a reasonable defense to the infringement;" that their considerations "are not limited" to the facts outlined as possible factors in a willfulness determination; and that the ultimate question was whether any "objectively high likelihood of infringing a valid patent was either known to Haldex or was so obvious that it should have been known to Haldex." (Tr. at 971:18 – 972:21 ). The language used in the Court's instructions matches directly with the language used by the Federal Circuit in *Seagate*, which states the controlling law on this issue, and which, as noted above, has been cited by Haldex as the appropriate legal standard for determining willfulness. The Court also instructed the jury on each of Haldex's defenses, including the alleged invalidity of the patent, and was under no legal obligation to separately list each of Haldex's alleged defenses again in the instruction on willfulness.

As to Haldex's complaint that the Court did not specifically instruct the jury to consider "whether of not Haldex was reasonable in relying on a legal opinion that advised Haldex that the '874 reissue patent was invalid," this is also insufficient to constitute any finding of error or inadequacy in the jury instructions. First, if the Court had included such an instruction, it would have been an improper intrusion into the realm of the jury because there was a question of fact as to whether Haldex did in fact rely on such legal opinion, as well as whether or not any such reliance would have reasonable. The instruction proposed by Haldex could be construed as an statement by the Court that Haldex did rely on a legal opinion, a conclusion that was far from established by the evidence presented at trial. Haldex's representative testified on the stand that

4

immediately upon hearing of the pending reissue application, Haldex knew that claims of the reissue patent would be infringed by its product, the ModulX. (Tr. at 258:14 – 23, 263:6–20, 523:12 – 525:12, 528: 1–6). Further, although Haldex then retained a patent lawyer to prepare an opinion that the reissue patent would allegedly be invalid for violation of the "recapture rule" and/or for inequitable conduct by Bendix, those arguments were rejected by the USPTO, and Mr. Kleinhagen, Haldex's president at the time, testified unequivocally that he did NOT rely on any legal advice when he decided to move forward with the ModulX despite being aware that it would infringe the reissue patent. (Tr. at 267:1 – 21, 268:19 – 269:16, 276:7 – 18, 814:1 – 23, 820:2 – 24, PTX 126).

The instructions clearly told the jury they could consider any facts that were relevant to the determination of willfulness, and also included an instruction telling the jurors to consider "whether or not there is a reasonable belief to believe that Haldex had a reasonable defense to the infringement." (Tr. at 972:7-9). Further, the Court immediately followed the willfulness instruction with specific instructions on each of Haldex's four invalidity defenses. (Tr. at 973:5 – 24). In addition, Haldex repeatedly argued to the jury that willfulness was not established because it believed the patent was not valid. Building on the legal standards and instructions from the Court, Haldex highlighted the validity requirement under the willfulness standard in its closing arguments. (Tr. at 939:6-21). Therefore, there is absolutely no basis for the speculative contention that the jury would have somehow been confused about the interplay between the validity requirement in the willfulness instruction, and Haldex's individual defenses addressing the validity of the patent.

Finally, Haldex also contends that the Court committed prejudicial error by the order in

which it presented the jury interrogatories for consideration.  The verdict forms specifically required the jury to answer interrogatories on both invalidity and willfulness.  Haldex argues that this "erroneously and prejudicially confused the jury into believing that invalidity of the patents had NO bearing on the determination of willfulness."  (Haldex Mem. at 5).   There is no reason to believe that the jury was in any way confused by the interrogatories.  The first interrogatory asked the jury to make a determination on the Plaintiff's claim.  The remaining interrogatories asked the jury to make a determination on each of the Defendant's affirmative defenses.  There were no inconsistencies among the answers to any of the interrogatories.  The jury found that Plaintiffs proved their case for willful infringement, and that the Defendant did not bear its burden of proving that any of its argued defenses applied.  The instructions, as well as the wording of the first interrogatory clearly required the jurors to determine whether Haldex willfully infringed a valid patent.  Therefore, there is no basis for Haldex's contention that the jurors would have believed that the validity of the patent had no bearing on the determination of willful infringement.

## II. Judgment as a Matter of Law

### A. Legal Standard

Federal Rule of Civil Procedure 50(a) and (b) allows a court to hand down judgment on a case when "a party has been fully heard on an issue" and "there is not legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. . . ."  Fed. R. Civ. P. 50(a), (b).  A court may issue a judgment as a matter of law that conflicts with a jury's verdict, only if the moving party can show that the verdict lacks any legally sufficient evidentiary basis.

The question is not whether the defendant presented a plausible defense, but whether the jury "was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 638 (7th Cir. 1003); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010).

B. Analysis

In this case, the jury had a legally sufficient amount of evidence from which it could reasonably derive its verdict. Haldex claims that because their witness, Mr. Witherspoon provided a opinion that the patent at issue was not valid, there could be no finding of willfulness. This, however, is not true. An opinion of counsel is not an automatic or irrefutable defense to willfulness, and it can only support a non-willfulness defense when it properly addresses the issues at hand, and when the infringer actually relies on the opinion when it decides to infringe.

There was ample evidence in this case to suggest that Mr. Witherspoon's opinion was not reliable under the objectivity prong of *Seagate*. The evidence showed that Mr. Witherspoon was not a person of ordinary skill in the art relevant to the '874 patent, and he admitted that a patent's validity under the written description requirement must be evaluated by a person of ordinary skill in that art. (Tr. at 797; 15-18, 799:3-14). His opinion also ignored that Patent Office's finding rejecting the invalidity arguments presented in the original opinion Haldex obtained from Mr. Bjorge. (Tr. at 802:3-14). There was evidence relating to Mr. Witherspoon's lack of relevant technical expertise and his disregard of certain key facts, and the jury was free to consider such evidence when determining whether to give weight to his opinion, and whether Haldex was reasonable to rely upon it. *See Minks v. Polaris Indus., Inc*., 546 F.3d 1364, 1380 (Fed. Cir. 2008); *Liquid Dynamics Corp. v. Vaughan Co., Inc*., 449 F.3d 1209, 1226 (Fed. Cir. 2006).

7

In addition to the evidence suggesting that Mr. Witherspoon's opinion did not set forth a reasonable defense, or that he was not qualified to present such an opinion, there was also evidence showing that Haldex never relied on Mr. Witherspoon's opinion when it made the decision to continue producing the ModulX even after the issuance of the '874 Patent.  The evidence showed that immediately upon becoming aware of the '874 Patent application by Knorr-Bremse, Haldex confirmed for itself that the claims of the application that did not require a "one-piece caliper" would be infringed by the ModulX if the patent was granted.  (Tr. at 258:14-23, 263:6-20, 523:12-525:12, 528:1-6).   Further, Haldex retained a lawyer to provide an opinion that the claims were invalid and presented these arguments to the Patent office in an attempt to preclude the issuance of the Patent.  The arguments, however, were rejected by the USPTO, and this rejection was made known to Haldex before the patent was issued and any actual infringement occurred.  (PTX 126; Tr. at 814:1-23, 820:2-24).

Haldex later retained additional counsel to provide another opinion as to the validity of the patent, based on the same theories rejected by the USPTO.  However, as set forth above, the second opinion was drafted by someone who was not a person of ordinary skill in the art, and who did not take into account that the arguments had already been rejected by the Patent office.  Therefore, the jury was free to discount the reliability and legitimacy of the second opinion.  Just as importantly, Haldex's president testified that Haldex did not rely on any legal advice when it decided to go forward with the ModulX even though it knew it would infringe the '874 Patent.  (Tr. at 267:1-21, 268:19-269:16, 276:18).  An opinion of counsel, even if reasonable and reliable, does not insulate an infringer from a finding of willfulness, if the infringer did not rely on the opinion when it made the decision to infringe.

Without reiterating all of the evidence presented at trial, or commenting on the relative credibility of the various witnesses, the evidence discussed above is only an example of the evidence available to the jury that could reasonably have supported their verdict in favor of the Plaintiff and against Defendant on the issue of willfulness.   Having heard all of the evidence, and having seen the witnesses first-hand, there is no question that the jury had a legally sufficient evidentiary basis for its findings, and this Court will not disturb those findings.

## **CONCLUSION**

For the reasons set forth above, Haldex's Motion for A New Trial or, Alternatively, a Judgment As a Matter Of Law Regarding Willfulness is DENIED.  (ECF # 186).

IT IS SO ORDERED.

   /s/ Donald C. Nugent
Judge Donald C. Nugent
UNITED STATES DISTRICT JUDGE

DATED:  January 3, 2011