**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENDIX COMMERCIAL VEHICLE, SYSTEMS, LLC, *et al.*, | ) ) ) | CASE NO. 1:09 CV 176 |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiffs, | ) | |
| v. | ) ) | |
| | ) | MEMORANDUM OPINION |
| HALDEX BRAKE PRODUCTS CORPORATION, | ) ) ) | AND ORDER |
| Defendant. | ) | |

      This matter is before the Court on Defendant, Haldex Brake Products Corporation's ("Haldex") Motion for Equitable Intervening Rights and Equitable Estoppel, seeking an Order allowing it to unconditionally continue to make, use, sell, offer to sell, and import its brake products, royalty free, after the issuance of U.S. Reissue Patent No. RE38,874. Alternatively, Haldex seeks an order allowing it to: (A) continue to sell its ModulX to any customer, current or future, in any market, and for any purpose, at a royalty to Plaintiffs; or (B) continue to sell its ModulX to any current customer for any purpose, at a royalty to Plaintiffs. (ECF #188).

**I. Equitable Intervening Rights:**

## **LEGAL STANDARD**

Title 35 of the United States Code, Section 252 states as follows:

The court . . . may provide for the continued manufacture, use, offer for sale, or sale of the [product in question] . . . in the United States of which substantial preparation was made before the grant of the reissue . . . to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue. Equitable intervening rights are available as a means to balance the public interest in the patent system and the remedial purpose of the reissue statute with the private interest of an infringer who innocently and in good faith has undertaken substantial activities that become infringing with the issuance of a reissue patent. *Henkel Corp. v. Coral, Inc*., 754 F.Supp. 1280, 1320 (N.D. Ill. 1990)(citing *Seattle Box Co. V. Indus. Crating & Packing*, 756 F.2d 1574, 1579 (Fed. Cir. 1985).   Equitable intervening rights are entirely equitable in nature and the appropriateness of such relief is a determination for the court to decide. *Revolution Eyewear, Inc. V. Aspex Eyewear, Inc*., 563 F.3d 1358, 1373 (Fed. Cir. 2009).

To determine whether the grant of equitable intervening rights is appropriate, courts consider various factors, including: (1) whether substantial preparation was made before the reissue; (2) whether there are existing orders or contracts; (3) whether non-infringing goods can be manufactured from the inventory used to manufacture the infringing product and the cost of conversion; and, (4) whether the infringer has made profits sufficient to cover its investment. *Seattle Box Co., Inc. V. Indus. Crating & Packing, Inc.*, 756 F.2d 1574, 1579-80.   As this is an equitable determination, the court may also consider the relative degrees of good faith or bad

2

faith exercised by the parties in connection with their product and patent development. *See generally, id.*

## ANALYSIS

Haldex argues that it made substantial investments to redesign its air disc brake after it was found to infringe the original '445 Patent, in order to design around the patented aspects of the product. In total, it claims to have spent $3.3 million in the design and production of the new ModulX product.[1] Haldex claims to have invested $1.3 million in the design of the ModulX before it knew that Knorr-Bremse had filed for reissue of its '445 Patent. (Tr. 496:4-497;1, 14-20, Kleinhagen). However, a "large portion" of the total amount was admittedly undertaken after Haldex had concluded that the ModulX was covered by the claims of Knorr-Bremse's pending reissue application. (Tr. 561:10 - 564:24, Kleinhagen). Further, the evidence at trial shows that the investment Haldex made in the ModulX was not driven by the potential for sales in the U.S. Market. Matthew Resch, a Haldex marketing executive with responsibility for the North American air disc brake market, explained at trial that Haldex's investment decision was based on the sales potential in the European market. He conceded that it would not have made sense for the business to invest in manufacturing capacity for the extremely small U.S. market. (Tr. 326:9 - 327:2, Resch).[2] Mr. Kleinhagen, Haldex's former president, also admitted that the "vast majority" of the projected sales that justified the investment (and from which

---

[1] There is no question that the ModulX did not infringe the original '445 Patent.

[2] To the extent that Haldex may have made a bad business decision and relied too heavily on the U.S. market in making this investment decision, they must suffer the consequences of the decision as any company would. Equitable intervening rights are not meant as a redress for bad business decisions.

Haldex intended to recoup its investment money) were from foreign sales. (Tr. At 568:6 - 570:25; DTX 64).   Therefore, because the evidence has shown that the investments made by Haldex in the design and manufacture of the ModulX were not entered into in reliance on the availability of the U.S. market, and because Haldex was aware that the new design would infringe the pending reissue patent before it began production and re-tooling efforts resulting in the majority of the costs incurred, the equities do not weigh in Haldex's favor on this factor.

Haldex also argues that it had existing orders for the ModulX at the time of the reissue, that it is currently committed to close to 3,000 units worth of complete assemblies, components and/or materials for the ModulX, and that it cannot use these units outside of the U.S.. Despite this claim, Haldex has only alleged that 1,000 units are components specific to the U.S. version of the ModulX (although they are currently being held in Sweden).[3]  Haldex also claims that it has not made profits on sales of its ModulX sufficient to recoup its investment costs, in the United States or even accounting for its world wide sales.  Haldex cites to the testimony of Mr. Kleinhagen and Mr. Resch for this proposition, but has provided no documentation of the sales, profit margins, or explanation of how operating losses were determined.   Mr. Kleinhagen also testified that Haldex has, to date, sold at least $250 million to $350 million worth of ModulX brakes outside of the United States. (Tr. 565:9 - 566:12).  However overall profits are calculated, there can be no question that this high level of sales more than covers the alleged $3.3 million dollar investment made in the ModulX brake product line.  In addition, there is no bar to the manufacture and future sales of the ModulX brakes outside of the United States.

---

[3] Despite these allegations, Haldex did not present any actual evidence at trial showing that these components existed in inventory, or were being held, or had been contracted to be built for use in the United States.

Therefore, future sales will continue to offset the investment, even if Haldex bears some minor loss for units and components that cannot be converted for use outside the United States.

Finally, Haldex reasserts its argument that Knorr-Bremse acted in bad faith by delaying the request for the reissue patent and by delaying in bringing suit against Haldex for the infringement of that patent. There is absolutely no evidence that Knorr-Bremse acted in bad faith. It timely filed a petition for reissue within the time frame allowed by statute, and it filed its lawsuit against Haldex within the statute of limitations, as was its right. It is undisputed that Knorr-Bremse informed Haldex of its intent to file the reissue patent within one month of discovering that Haldex had a prototype that would infringe the proposed reissue patent. (Tr. 109:15 - 112:5, 258:14 - 259:15; PTX 36; PTX 116). Further, there is no evidence that Knorr-Bremse was aware of Haldex's actual infringing activities until six months before this suit was filed. (Tr. 366:12 - 368:8).[4]

Haldex also complains that Knorr-Bremse actually bought units of the ModulX from Haldex. There is no question that Knorr-Bremse did not seek damages for any units it authorized to be manufactured or that it otherwise purchased. Also, as with the delay in filing, these authorized sales allowed Haldex another opportunity to pay down its investments costs, thus, tipping the equities more toward Knorr-Bremse than toward Haldex.

In contrast to the utter absence of any evidence of bad faith on the part of Knorr-Bremse, the jury found, based on substantial evidence presented at trial, that Haldex's infringement was

---

[4] Further, because of the "delay" in filing for reissue, Haldex had more time than it otherwise would have had to recoup some of the losses from its investment. The delay in filing led to a delay in the issuance of the second patent, which gave Haldex more opportunity for sales that were protected by the absolute intervening rights provided by the statute.

willful.  Thus, none of the factors considered by the Court would weigh in favor of allowing Haldex to continue the sale and manufacture of its infringing product with or without royalty. Haldex's motion for equitable intervening rights is, therefore, denied.

**II. Equitable Estoppel**:

### LEGAL STANDARD

To establish the defense of equitable estoppel, a defendant must prove that: (1) Plaintiffs communicated something to them in a misleading way, either by words, conduct, or silence; (2) the defendant relied on that communication; and, (3) the defendant would be materially harmed if Plaintiffs are permitted to assert a claim that is inconsistent with their earlier conduct.  *See A. C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992).   The court has broad discretion to determine whether the doctrine of equitable estoppel applies in a particular case, and it is not "limited to a particular factual situation nor subject to resolution by simple or hard and fast rules." *Id.*  Bad faith, such as fraud or intent to mislead, is not required to establish estoppel, but it may affect the overall balancing of the equities.  *Id*. at 1043, n. 18.

### ANALYSIS

Haldex claims that it relied on statements made during the original '445 Patent trial stressing the critical nature of the "one-piece" caliper aspect of the invention at issue in that original litigation.   However, there is no evidence or allegation that Knorr-Bremse ever communicated that it would not attempt to expand the scope of the '445 patent through a reissue patent, or that it would not pursue its rights under any such reissue patent.  In fact, in 2002,

before the ModulX  was manufactured or sold by Haldex, Knorr-Bremse told Haldex that it had filed a reissue patent that would encompass the changes made in the ModulX prototype and that, if granted, the ModulX would be an infringing product.  (Tr.  52:17  - 58:11; PTX 18).  Following this disclosure, the parties were engaged in communications that were aimed at reaching a global resolution of this and other patent issues existing between the parties.  (Tr. 58:12-25).   Those discussions ended when Haldex attempted to prevent the reissue patent from issuing by filing objections that were ultimately found to be unfounded.  (Tr. 59:1 – 60:25; PTX 89).   There is no evidence of any other communications between the parties until after the lawsuit was initiated.  (Tr. 368:9 – 369:6).

Haldex also argues that it was misled by Knorr-Bremse's "acquiescence over the four-year period between issuance of the Reissue Patent and the filing of its complaint in the instant litigation and its own purchase of Haldex's ModulX brakes," and this silence evidences a communication that Knorr-Bremse did not intend to assert patent claims against Haldex based on the reissue '874 Patent.  This argument is factually and legally deficient.  First, Knorr-Bremse filed suit within the applicable statute of limitations.  A delay in filing suit, that does not fall outside the statute of limitations, absent any affirmative communication to the contrary, cannot reasonably be presumed to be an acquiescence to illegal activity.   Further, the fact that Knorr-Bremse bought some brake products from Haldex cannot be reasonably construed to grant unlimited licence to Haldex to provide infringing products to third parties.

The Court finds no misleading communications by Knorr-Bremse, and no *reasonable* reliance on any alleged or perceived communications by Haldex.  Further, as set forth above in the discussion of equitable intervening rights, Haldex has not proven that it suffered material

7

prejudice based on its alleged $3.3. million dollar investment in the ModulX brake products. Therefore, Haldex's defensive motion for equitable estoppel is also denied.

## CONCLUSION

For the reasons set forth above, Haldex's Motion for Equitable Intervening Rights and Equitable Estoppel are DENIED. (ECF # 188).

IT IS SO ORDERED.

      /s/ Donald C. Nugent
Judge Donald C. Nugent
UNITED STATES DISTRICT JUDGE

DATED: January 3, 2011