**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENDIX COMMERCIAL VEHICLE, SYSTEMS, LLC, *et al.*, | ) ) ) | CASE NO. 1:09 CV 176 |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| HALDEX BRAKE PRODUCTS CORPORATION, | ) ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Plaintiffs, Bendix Commercial Vehicle Systems LLC, Knorr-Bremse Systeme fur Nutzfahrzeuge GmbH, and Bendix Spicer Foundation Brake LLC's (collectively "Plaintiffs") Motion For Award of Attorney Fees Pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927, (ECF #187); and, Plaintiffs' Post-Trial Brief in Support of Claim for Permanent Injunction, Enhanced Damages, and Prejudgment Interest (ECF #189). Haldex filed an opposition to these motions (ECF #195, 196), and Plaintiffs filed a Reply brief in support of their requests. (ECF #201). The matter is now fully briefed and ripe for the Court's consideration.

I. Attorney's Fees

The Patent Statute authorizes this Court to award "reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285. The determination of whether to award fees under the statute requires a two-step process: (1) the court must make a factual determination as to whether the case is "exceptional," and (2) the court must exercise its discretion to determine if an award of attorney fees is warranted. *See Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1315 (Fed. Cir. 2005).

Under 35 U.S.C. § 285, a case may be found exceptional where there is "willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation . . . [or] frivolous suit." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). The party seeking attorneys fees under this section bears the burden of showing by clear and convincing evidence that the case is exceptional. *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1314 (Fed. Cir. 2010)(citing *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003)). The parties agree that a finding of willful infringement can be, in and of itself, a sufficient basis to find that a case is "exceptional" under the statute. *See, e.g., Golight, Inc. v. Wal-Mart Stores, Inc*., 355 F.3d 1327, 1340 (Fed. Cir. 2004); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1373 (Fed. Cir. 2006); *Amsted Indus. Inc. V. Buckeye Steel Castings Co.*, 24 F.3d 178, 184 (Fed. Cir. 1994); *Goodwall Constr. Co. v. Beers Constr. Co.*, 991 F.2d 751, 759 (Fed. Cir. 1993); *Kori Corp. v. Wilco Marsh Buggies & Draglines*, 761 F.2d 649, 657 (Fed. Cir. 1985); *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 482 (Fed. Cir. 1985); see also Def. Opp. at 3 (ECF #196). In this case, the jury determined that Haldex willfully infringed Knorr-Bremse's '874 Patent. That finding was

supported by a substantial amount of evidence offered at trial, and is a sufficient basis upon which this Court may find that this case is "exceptional" for the purposes of 35 U.S.C. § 285.

In addition to the willfulness verdict, the Court also finds that Haldex engaged in misconduct during the litigation. This misconduct provides an additional basis for determining that the case is "exceptional" under 35 U.S.C. § 285, and, therefore subject to an award of attorneys fees. Haldex and its attorneys refused to concede actual infringement despite their clear knowledge that the ModulX brake products infringed the '874 Patent. Plaintiffs asked Haldex to concede this issue without compromising their invalidity defenses and Haldex refused to respond. This forced Plaintiffs into a position where they had to spend time and resources drafting a summary judgment motion on the issue, which Haldex then opposed, despite the fact they had conceded infringement.

Haldex also engaged in misconduct relative to its prior art defenses. Haldex did not identify any evidence of prior art in its expert reports or Interrogatory responses that would support its anticipation or obviousness defenses under 35 U.S.C. § 102 and 103. Therefore, at the close of discovery, Plaintiff's counsel sent a letter requesting that Haldex withdraw these defenses for lack of evidentiary support. Instead, Haldex filed an untimely "supplemental response" to a previous interrogatory identifying ten references (without explanation of how those references would invalidate the '874 Patent), each of which were known to Haldex prior to the close of discovery. Plaintiff again, informally requested the withdrawal of the supplemental response, and Haldex did not respond. (ECF #117).

Based on these circumstances, Plaintiffs again expended time and resources to file a motion for summary judgment on the defenses of anticipation and obviousness. (ECF #62).

3

Haldex opposed the motion, supporting its opposition with a "supplemental expert report." The supplemental report was served concurrently with the opposition, and two months after the close of discovery. (ECF #74). Plaintiffs again, were put in a position where they were required to expend time and resources addressing issues improperly raised by Haldex. This Court granted in part Plaintiffs' motion to strike the supplemental expert report, and granted Plaintiffs' motion for summary judgment on the anticipation and obviousness defenses, concluding that Haldex's condut was "utterly unjustified," . . . "unprofessional and violate[d] the spirit of the disclosure requirements set forth in the Federal Rules of Civil Procedure." (ECF # 117).

Yet another example of Haldex unprofessional manner and unreasonable positions is found in the allegations of fraud and inequitable conduct it made against the Plaintiffs throughout the litigation. The Court dismissed these claims on summary judgment (ECF #135) finding no factual support for the allegations, and was forced to issue a curative instruction during trial when Haldex's attorneys continued to make unfounded allegations of fraud and deception against the Plaintiffs during trial. (Tr. 532:13-20, 590:21 – 591:8 (Kleinhagen); 903:21 – 905:3, 906:11 – 911:18, 928:22 – 940:5 (closing); 960:17 – 961:3 (jury charge)).

The Court therefore finds by clear and convincing evidence, based on the jury's finding of willfulness, the substantial evidence in support of that finding at trial, and Haldex's repeated acts of misconduct and unprofessional behavior, that this case is "exceptional" within the meaning of 35 U.S.C. § 285.

Having determined that Haldex is subject to liability for Plaintiffs' attorney's fees, the Court must determine whether an award of attorney fees is, in fact, appropriate under all of the circumstances. As set forth in more detail above, Haldex's behavior as a party in this litigation

4

has been less than fully professional, and its positions have not all been based on a reasonable factual or legal interpretation of the actual circumstances at issue. In addition, Haldex decided to go forward with the sale and manufacture of a knowingly infringing product even after its objections to the validity of the patent were overruled by the USPTO. Haldex's former president Mr. Kleinhagen testified at trial that the decision to continue with the ModulX product was not based on any attorney's advice relating to the validity or invalidity of the patent, and accordingly, the jury found that Haldex's defenses were not supported by the evidence and that their infringement was willful.

Haldex' s main argument against the imposition of attorney's fees is its claim that the jury's willfulness finding was erroneous, or at the very least, a "close call." The Court disagrees with this assessment of the evidence at trial, and the validity of the jury's verdict. As has been stated above, the jury's finding was supported by substantial evidence, and it fully comports with the Court's understanding of the evidence and the applicable law.

Thus, the Court finds that Plaintiffs' request for the imposition of attorney fees pursuant to 35 U.S.C. § 285 is well-founded. Plaintiffs shall have fourteen days from the date of this Order to submit proof of the value of the fees incurred. Haldex shall have seven days to submit any objections it may have to the proof submitted by Plaintiffs.[1]

II. Enhanced Damages

---

[1] An award of sanctions under 28 U.S.C. § 1927 need not be addressed. Any attorney's fees and costs stemming from Plaintiffs' need to address issues that could be considered vexatious or that arose based on the unnecessary multiplication of proceedings by Haldex are covered by the Court's award of attorney fees and costs under 35 U.S.C. § 285 and 28 U.S.C. § 1920.

Pursuant to 35 U.S.C. § 284, the Court may "increase the damages up to three times the amount found or assessed." "[A]n award of enhanced damages requires a showing of willful infringement." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007). The primary purpose of enhanced damages is to deter further willful infringement. *SRI Int'l, Inc. v. Advanced Tech. Labs.*, 127 F.3d 1462, 1468 (Fed. Cir. 1997). Courts routinely award treble damages upon a finding of willful infringement because the principle factors to be considered in determining the appropriateness of enhanced damages are the same as the factors used in determining willfulness. *See SRI Int'l, Inc.*, 127 F.3d at 1469; *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1548 (Fed. Cir. 1984). However, the "egregiousness of the infringer's conduct may receive greater emphasis, as may any mitigating factors" when determining whether to treble damages or award a lower amount of enhanced damages. *SRI Int'l Inc.,* 127 F.3d at 1469.

Some of the factors to be considered in making this decision are: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) any remedial action taken by the defendant; (8) the defendant's motivation for harm; and, (9) whether the defendant attempted to conceal its misconduct. *Read Corp. V. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992), *abrogated in part on other grounds*, *Markman v. Westview Instruments, Inc*., 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).

Although Haldex may not have deliberately copied Knorr-Bremse's patented design, or attempted to hide its misconduct, the evidence is clear that once informed of Knorr-Bremse's patent application, Haldex investigated the scope of the patent and determined that its product would infringe the '874 Patent. (Tr. 258:14-23, 263:6-20, 523:12 – 525:12, 528:1 –6, Kleinhagen). Haldex proceeded with the development and sale of the ModulX even after its asserted defenses to the validity of the '874 Patent were rejected by the United States Patent and Trademark Office ("USPTO"). (PTX 126; Tr. 814:1 – 23, 820:2 – 24, Steiner). The President of Haldex also testified that the decision to continue with the infringing product after the issuance of the '874 Patent was not based on any legal advice that the patent was invalid. (Tr. At 267:1 – 21, 268: 19 – 269:16, 276:7 – 18). Rather, Haldex admitted that its motivation in proceeding with the sale and manufacture of the infringing product was to maintain a market presence and meet its customer demands. (Tr. 272:14 –18, 472:10 – 475:9, 509:18 – 511:2, Kleinhagen). There is no question that Haldex failed to take any remedial measures to address the infringement once it became aware that the '874 Patent had issued, or that it knew of the Patent's issuance in November 2005.

As set forth in more detail in the analysis of the Plaintiffs' request for attorney fees above, Haldex's behavior as a party in this litigation has been less than fully professional, and its positions have not all been based on a reasonable factual or legal interpretation of the actual circumstances at issue. In addition, Haldex's former president Mr. Kleinhagen testified at trial that Haldex is the "world leader in market share" for slack adjustors for drum brakes, and that its world-wide sales for the ModulX products alone totalled between $250 and $350 million since 2002. (Tr. 452:18 – 454:19, 565:14 – 566:12). This indicates that Haldex is of sufficient size

and financial condition as to warrant the imposition of treble damages in this case.

As with attorney fees, Haldex' s main argument against the imposition of enhanced damages is its claim that the jury's willfulness finding was erroneous, or at the very least, a "close call."  As stated above, the Court disagrees with this assessment of the evidence at trial, and the validity of the jury's verdict.  The jury's finding was supported by the great majority of the evidence presented at trial, and it comports with the applicable law.

Therefore, the relevant factors and circumstances weigh overwhelmingly in favor of granting the Plaintiffs' request for enhanced damages.  Further, based on the long history between Haldex and Knorr-Bremse, and taking into account that this is the third time Haldex has been found guilty of infringing on Knorr-Bremse's patents, and the second time that there has been a finding of willful infringement, it appears that the primary purpose of enhanced damages (i.e., deterring further willful infringement) will be best served in this case by the imposition of treble damages, which is the largest enhancement allowed by statute.

III.  Prejudgment Interest

Title 35 of the United States Code, Section 284 authorizes a court to award prejudgment interest on patent infringement damages.  Although an award of prejudgment interest is not automatic, it "should be awarded . . . absent some justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983).  Haldex argues that Plaintiffs delay in bringing the lawsuit in this case justifies a denial of their motion for prejudgment interest, citing the *Gen. Motors Corp.* case, as well as *Crystal Semiconductor Corp. v. Tritech Micro. Int'l*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001) for the proposition that an "undue delay in

8

prosecuting the lawsuit" can justify a denial of an award of prejudgment interest.

Haldex has presented no evidence of an undue delay in the prosecution of this litigation. According to the evidence at trial, Plaintiffs filed their lawsuit within six months of discovering that Haldex was infringing on the '874 Reissue Patent. (Tr. 366:12 – 368:8). Further, even if Plaintiffs delayed in filing suit, Haldex was in no way prejudiced by the delay. Plaintiffs informed Haldex of their intent to file a Reissue Patent application within a month of discovering that Haldex had a prototype that would infringe such a patent, and Haldex knew its product would infringe the patent no later than July of 2002, when its objections to the issuance of the patent were overruled by the USPTO. Further, there is no evidence that Haldex reasonably relied in the delay of litigation when it decided to proceed with the sale and manufacture of the infringing product. Therefore, Haldex has not met its burden to show a justification for withholding an award of prejudgment interest in this action.

IV. Permanent Injunction

Section 283 of the Patent Statute provides that courts "may grant injunctions in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. A permanent injunction should be granted upon a showing that: (1) the patentee has suffered an irreparable injury, (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) considering the balance of hardships between the patentee and the infringer, a remedy in equity is warranted, and (4) the public interest would not be disserved by a permanent injunction. *Ebay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 1839 (2006). Haldex claims

that the Court in *eBay Inc. v. Mercexchange*, LLC, 547 U.S. 388, 391 (2006) altered the standard for the granting of a permanent injunction in patent cases, rejecting prior Federal Circuit precedent that purported to grant permanent injunctions as a "general rule" whenever infringement was found. *Id.*

    A. <u>Irreparable Injury</u>

While this may be true, and courts are directed to apply the standard equitable test to determine the appropriateness of a permanent injunction, the whole point and benefit of a patent is the right to exclude others from manufacturing and/or selling the patented product. See 35 U.S.C. § 154(a)(1). When a competing company acts in violation of a patent holder's right to the exclusive use of an invention or product, the patent holder suffers an immediate, and in many if not most cases, irreparable harm. *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1246-47 (Fed. Cir. 1989)("Infringement having been established, it is contrary to the laws of property, of which the patent law partakes, to deny the patentee's right to exclude others from the use of his property.")(citations omitted).

The impact of the infringement is even greater when the parties are direct competitors. Courts routinely and rightly find irreparable harm when the infringer and the patentee are direct competitors. *See, e.g., Becton Dickinson and Co. v. Tyco Healthcare Group LP*, No. 02-1694 GMS, 2008 WL 4745882, at *3 (D. Del. Oct. 29, 2008); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010); *Mass Engineered Design, Inc. V. Ergotron, Inc.*, 633 F.Supp. 2d 361, 393 (E.D. Tex. 2009); *Flexiteek Americas, Inc. V. PlasTEAK, Inc*., No. 08-60996-CIV, 2009 WL 2957310, at *8-10 (S.D. Fla. Sept. 15, 2009). This has held true even after the *eBay* case was decided. *See, e.g., Transamerica Life Inc. Co. v. Lincoln Nat'l Life Ins. Co.*, 625

10

F.Supp. 2d 702, 719 (N.D. Iowa 2009); *Emory Univ. v. Nova Biogenetics, Inc.*, No. 1:06-CV-0141-TWT, 2008 WL 2945476, at *4 (N.D. Ga. July 25, 2008); *John Hopkins Univ. v. Datascope Corp.*, 513 F.Supp. 2d 578, 586 (D. Md. 2007), *rev'd on other grounds*, 543 F.3d 1342 (Fed. Cir. 2008). It was undisputed at trial that Haldex and Plaintiffs compete directly in the United States market for air disc brakes. (Tr. at 49:6-12, 66:1-9; 333:21-334;22; 366:12-16; PTX 25; 366:15-24), and that Bendix-Spicer has lost sales to Haldex's infringing product. (Tr. at 366:15-16).

In addition to the harm caused by having to compete against their own patented invention, the evidence at trial showed the value of the exclusionary rights to a product as a means of recovering the substantial investments made in the development and innovation of the product protected by the '874 patent. (Tr. at 47:22-48:14, 69:17-25; 375:1-12). The exclusive ability to sell an innovative product in the field can lead to the capture of clients maintained by the infringing competitor, and can increase the customer loyalty of Plaintiffs' existing customers. This is especially important in a market that both parties agreed is heading into a period of tremendous growth due to the imposition of new safety regulations. (Tr. at 327:3 - 328:18; 331:16-21; 370:11- 374:5; PTX 24 (HDX 008642-008647; PTX 98 (KBX_HA 00037900– 00037921).

B. <u>Inadequate Remedies at Law</u>

Traditional monetary damages are insufficient to compensate Plaintiffs for the harm inflicted by Haldex's infringement. The loss or gain of a customer may have harms or benefits beyond just the sale of the patented product. Customers often choose to do all of their business with one supplier, therefore, the ability to attract customers with exclusive access to an

innovative product is often relied on to increase the sales of other products and services as well. The ancillary business that may come from converting customers of a competitor cannot be compensated by a mere royalty on the patented product.

In addition, Bendix has a distribution agreements with other Arvin Meritor, the other Plaintiff in this case. That agreement allowed Arvin Meritor a license to sell the patented braked product in a primarily non-competing market segment. (Tr. at 365:1 - 366:1, 394:15 – 396:10). The agreement was the result of a settlement in a prior infringement suit, arrived at by negotiation and mutual consent. It also permitted Bendix, if they so desired, to set the length of the license, the value of the license, the scope of the market affected, and other terms and restrictions agreed on by the parties. If Haldex is allowed to continue the sale and manufacture of the patented product, the value of this distribution agreements may be lessened, and the incentive for any other business to attempt an arm's length negotiation for distribution rights in the future, subject to any terms and restrictions set by Bendix, would be severely diminished. Further, it would defy the principles of equity to force Bendix-Spicer into what amounts to an unwanted contractual relationship with a competitor who has repeatedly been found to willfully infringe on Bendix's patents and has otherwise created a long-term contentious relationship exhibiting a lack of respect or acknowledgment of Bendix's legal rights.

Finally, absent the imposition of a Court imposed licensing agreement, a resolution that would violate Bendix rights under the Patent, if Haldex is allowed to continue to manufacture and sell infringing products, Bendix would be forced to continue to sue Haldex to recover any monetary relief for the infringing activity. This would be an inadequate solution for Bendix because it would be required to expend and divert resources that could be used toward the

advancement of its products and its business to monitor, challenge, and sue Haldex for all future infringement. Haldex has already caused years of turmoil in two different cases where it has been found guilty of willful infringement of Bendix's patents. Allowing it to continue in this vein, gaining the benefit of retaining customers who would otherwise fall to Bendix, while imposing on Bendix the stress, uncertainty, and up front expense of having to institute lawsuit after lawsuit would be a disservice to the principles of equity, and the purpose of the patent laws themselves.

### C. Balance of Equities

As set forth in this Court's decision on Haldex's Motion for Equitable Intervening Rights and Equitable Estoppel, there is no credible evidence that Haldex would suffer any serious harm if it were banned from violating Bendix's patent in the future. Haldex claims that it spent a great deal of money developing its product prior to the issuance of Bendix's '874 Patent. However, as set forth in greater detail in the Court's other Order, Haldex was well aware of the pending patent before most of the expenses were incurred; Haldex is currently allowed to sell its products in non-U.S. markets; and Haldex has more than made up investment through the non-U.S. sales to date.

### D. Public Interest

There is absolutely no evidence to support a finding that a permanent injunction in this case would negatively affect the public interest. In general, the public interest is served by protection of the patent holders statutory rights. *See Abbott Labs v. Andrx Pharms., Inc*., 452 F.3d 1331, 1348 (Fed. Cir. 2006). There is no reason to believe that any member of the general public would be prevented from accessing the product at issue in the event that an injunction is

issued.  There is evidence to show that Bendix would be able to satisfy any customer demand resulting from an injunction against Haldex, and that Bendix would work with Haldex to ensure that Haldex's existing customers could obtain replacements parts for previously purchases Haldex products, or could switch their existing products for a non-infringing product manufactured by Bendix.  (Tr. at 389:8 – 391:14).

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Attorney Fees (ECF #187) is GRANTED.  Plaintiffs have fourteen days to submit proof of the value of the fees incurred.  Haldex shall have seven days to submit any objection it may have to the proof submitted by Plaintiffs.  Plaintiffs' Post-Trial request for Permanent Injunction, Enhanced Damages, and Prejudgment Interest (ECF #189), is also GRANTED.  IT IS SO ORDERED.

       /s/ Donald C. Nugent
       Judge Donald C. Nugent
       UNITED STATES DISTRICT JUDGE

DATED:   January 3, 2011