**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENDIX COMMERCIAL VEHICLE, SYSTEMS, LLC, *et al.*, | ) | CASE NO. 1:09 CV 176 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| HALDEX BRAKE PRODUCTS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a determination as to the appropriate amount of attorney fees and expenses to be awarded pursuant to this Court's January 3, 2011 award of attorney fees to Plaintiffs. Plaintiffs submitted an itemization of attorney fees and expenses (ECF # 218), and Defendant, Haldex filed objections to the Plaintiffs' itemization. (ECF # 222). The matter is now fully briefed and ripe for the Court's consideration.

As discussed in this Court's prior order awarding attorney fees to Plaintiffs, the Patent Statute authorizes this Court to award "reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285. This Court found by clear and convincing evidence, based on the jury's finding of willfulness, the substantial evidence in support of that finding at trial, and Haldex's repeated acts of misconduct and unprofessional behavior, that this case is "exceptional" within the meaning of 35 U.S.C. § 285.

The parties agree that attorney fees should be awarded based on an original determination of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which has become known as the "lodestar analysis." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The U.S. Supreme Court has also adopted several factors that may be considered when determining what is a reasonable hourly rate or reasonable number of hours. *See Id.* at 434 n.9.

> These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed v. Rhodes*, 179 F.3d 453, 471 n.3 (6th Cir. 1999)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983)); *see also Johnson v. Georgia Highway Express, Inc.*, 488 f.2d 714 (5th Cir. 1974).

In addition to the above factors, the Court may consider the degree of success obtained by the prevailing party. *Hensley* 461 U.S. at 436. "Where... a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation.'" *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988)(*quoting Hensley*, 461 U.S. at 435.).

Generally, the reasonableness of the rates corresponds to the prevailing rates in the relevant community and focuses on the experience, training, and background of the individual attorneys, and is "defined as the rate that lawyers of comparable skill and experience can

reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)(citations omitted); *see also, Louisville Black Police Officers Organization, Inc. V. City of Louisville*, 700 F.2d 268, 277 (6th Cir. 1983). However, there is an exception to this general rule when a case merits the use of an "out-of-town-specialist." *See Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). Specialist rates are often considered in the field of patent law and other complex litigation. *See, e.g., Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir. 1982); *Telecommunication Systems, Inc. v. Mobile 365, Inc.*, No. 3:06CV485, 2009 WL 5943235, at *13 (E.D. Va March 31, 2009).

The use of out-of -town lawyers, specially skilled in patent law was unquestionably reasonable in this instance. The case involved difficult patent issues and required a thorough knowledge of U.S. and international patent processes, as well as an intimate understanding of the extensive history of prior litigation between the parties, and the nature of the relationship between Plaintiffs and Defendant. Plaintiffs' counsel in this case represented Plaintiffs in several patent litigations, including the prior patent infringement case against this Defendant, Haldex. Further, some of the current counsel were actually involved in the patenting process of the invention at issue in this case, thus, they brought a high level of knowledge and understanding of the issues that could not be obtained by hiring local Cleveland counsel, or even by hiring other out-of-town specialists. Further, although Haldex complains of the overall number of hours worked, it would be reasonable to assume that hiring any other counsel, who were unfamiliar with the product and patent at issue, and unfamiliar with the litigation history between the parties, would have resulted in an even higher expenditure of hours in order to achieve the results that these lawyers obtained for their clients.

Both parties have submitted evidence as to the reasonableness of rates charged by patent attorneys in Washington D.C.. The Court finds that the evidence submitted by Plaintiffs is sufficient to establish that the rates charged fall within the range of reasonable hourly rates for specialized patent attorneys and paralegals with comparable qualifications in the Washington D.C. area. Further, even if the Court were to accept Haldex's proposed rate schedule for the original lodestar calculation, consideration of the factors adopted in *Hensley,* would easily lead to the conclusion that, under the circumstances of this case, the rates charged by Plaintiffs' lawyers were reasonable.

The case required an inordinate amount of time and labor based on the extensive motion practice and discovery difficulties encountered during the course of the litigation, most of which were initiated or caused by the Defendant. The questions at issue, although artfully distilled and presented at trial, were complex and layered, requiring the analysis and understanding not only of the specific patent at issue, but of earlier related patents and patent application procedures as well. To understand, simplify, and distill the information and present it to the jury in an understandable and persuasive manner involved an extremely high level of skill. Plaintiffs' lawyers did exceptional work in this case, and achieved the best possible outcome for their clients.

Further, the attorneys were paid their customary fee, and the fees are commensurate with rates charged by other firms in the Washington, D.C. area. The fees sought correspond to fees actually paid by Plaintiffs to their attorneys and do not include any contingency or performance based windfall for the lawyers. Although the damage amounts in this case were not extensive, the $300,000 in actual damages pales against the value of an enforceable permanent injunction

that will prevent Haldex from continuing its established practice of infringement against the Plaintiffs, causing disruption to their business and impacting their future sales as well as their customer development and retention. Plaintiffs also had a long-standing professional relationship with these attorneys, including prior representation relating to past dealings with this Defendant, other patents on the same product, and other general patent issues that arose within the course of Plaintiffs' business.

Finally, the amount of attorney fees sought by Plaintiffs is not out of line with the costs received in other patent cases with a similar level of complexity. See, e.g., Supko Decl. Ex. 8, AIPLA Report of the Economic Survey 2009, I-129; *Aptix Corp. V. Meta Systems, Inc.*, No. 04-1368, 2005 WL 1433137, at * (Fed. Cir. June 21, 2005); *Powell v. Home Depot U.S.A., Inc.*, 715 F.Supp.2d 1285, 1300 (S.D. Fla. 2010); *MarcTec, LLC v. Johnson & Johnson*, No. 07-cv-825-DRH, 2010 WL 680490, at *11 (S.D. Ill. Feb. 23, 2010). Haldex argues that the AIPLA Report cited by Plaintiffs showing that the median total costs in patent infringement cases in Washington, DC, is $3.2 million, is not indicative of a reasonable fee in this action, because the cases surveyed in that report involved cases where $1 to $25 million dollars were at stake, and the jury awarded damages in this case of only $100,000.[1] However, the amount of current damages incurred due to willful infringement is not the only measure of the value of a case. The amount at stake should also include the value of future damages that would have been incurred had the infringement not been enjoined as a result of the litigation. In addition, the amount of damages at stake are only one of many factors that justifies expanding the range of reasonable

1 The Court found that these damages were appropriately trebled to arrive at a final judgment of $300,000 plus various costs, expenses, and pre-judgment interest.

fees allowed under an award of attorney fees, and absent some exigent circumstances not at issue in this case, a company is fully justified in aggressively pursuing an action to stop the willful infringement of its patents in exercise of its legal rights, regardless of the amount of damages at stake. The Court, therefore, finds that the rates charged by Plaintiffs attorneys during the course of this litigation are reasonable under all the circumstances and are fully justified by the *Hensley* factors, and other considerations approved by the Sixth Circuit.

The Court also finds that the number of hours spent on the litigation by Plaintiffs attorneys is well documented and reasonable under the circumstances. The calculations Haldex used to arrive at its estimation of a reasonable number of hours is based on a series of blind assumptions, and uses random allegedly average numbers to approximate what should have been reasonable in this specific case. Further, Haldex relies far too much on its own perception that this case was worth no more than $40,000 in damages, despite the fact that Plaintiffs were awarded $300,000 in damages, plus interest and costs, and will clearly obtain a valuable financial benefit from the imposition of the permanent injunction.

Further, the examples Haldex provides from this action of alleged overbilling is not persuasive. Even these examples are bereft with unsupported assumptions. For example, Haldex claims that Plaintiffs spent 200 hours on the preparation of their Motion for Summary Judgment of Infringement. However, it bases this on any time entries that referenced "summary judgment motion" prior to the time that motion was filed. This is an unreasonable assumption to make when some of those entries specifically referenced the Motion for Summary Judgment of Infringement and others simply referenced "motion for summary judgment," and when Haldex had filed multiple summary judgment motions during the same time period that required

responses. Further, Haldex admits that it included all of the time in for a relevant entry because Plaintiffs used daily block billing. Considering the many issues that were addressed during the pendency of this litigation, the number of procedural and discovery disputes that arose during the litigation (many of which were raised by Haldex), the excessive number of dispositive motions filed in this action (again, mainly by Haldex), the inordinate number of post-trial motions that had to be addressed following the jury's verdict, and the complicated history involved in the creation of the re-issue patent at issue, this Court finds that the number of hours expended by Plaintiffs in pursuit of their case, and in defense of their judgment are reasonable.

Plaintiff also asserts that under the Federal Rules of Civil Procedure, this Court has the discretion to award additional expenses related to attorney fees, but not ordinarily taxable as costs. Fed. R. Civ. P. 54(d)(2). Plaintiffs seek reimbursement of $174,798.94 in out-of-pocket expenses such as hotel and travel expenses for attendance at hearings, depositions and trial, trial graphic consultants, facsimile expenses, long distance telephone charges, and postage charges, as well as $408,336.04 for expert witness fees and expenses. The district court has discretion to award such expenses under its inherent power to impose sanctions in cases involving bad faith. *Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*, 549 F.3d 1381, 1390-91 (Fed. Cir. 2008). Under the circumstances of this case, and taking into account the results obtained by the Plaintiffs, the Court declines to award sanctions in order to cover the costs of the miscellaneous expenses addressed above. The imposition of treble damages, taxable costs, and attorney fees have already taken into account the jury's finding of willfulness, and Defendant's misconduct and lack of professionalism during the litigation. The Court finds no need to impose additional sanctions based on the same allegations of willfulness and bad faith.

**CONCLUSION**

For the reasons set forth above, this Court finds that Plaintiffs are entitled to an award of attorney fees in the amount of $2,605,314.49, plus post-judgment interest, calculated from January 3, 2011, the date of the Court's Amended Judgment awarding Plaintiff attorney fees, in accordance with 28 U.S.C. § 1961. *See Mathis v. Spears*, 857 F.2d 749, 760 (Fed. Cir. 1988). Plaintiffs' request for additional costs and expenses is denied.

Donald C. Nugent

Judge Donald C. Nugent
UNITED STATES DISTRICT JUDGE

DATED: March 1, 2011